UNITED STATES of America,
Plaintiff–Appellee,

v.

Leonard ROWE, Walter Preston Rash,
Defendants–Appellants.

No. 88–8850.

United States Court of Appeals,
Eleventh Circuit.

July 24, 1990.

Mark J. Kadish, James J. McGinnis, Law Firm of Mark J. Kadish, P.C., Atlanta, Ga., for defendant-appellant Rowe.

Walter Moore Henritze, Jr., Atlanta, Ga., for defendant-appellant Rash.

Robert L. Barr, Jr., U.S. Atty., Robert Schroeder, Asst. U.S. Atty., N.D. Ga., for plaintiff-appellee.

Before TJOFLAT, Chief Judge, ANDERSON, Circuit Judge, and ESCHBACH *, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge:

Leonard Rowe and Walter Rash were indicted by a federal grand jury of one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. §§ 1343, 371, one count of wire fraud, in violation of 18 U.S.C. § 1343, and two counts of interstate transportation of stolen goods, securities or money in excess of $5,000, in violation of 18 U.S.C. §§ 2314, 2. Following a jury trial defendant Rowe was found guilty on all four counts in the indictment. Rash was found guilty on two. Though the defendants raise numerous grounds for the reversal of their convictions, none prove meritorious. However, to elucidate our framework for reviewing cases of alleged jury misconduct, we articulate herein the reasons for our rejection of the defendants' claim that a juror's misconduct denied them their sixth amendment right to trial by a fair and impartial jury.

I.

After nearly two weeks of trial and following counsels' closing arguments, Judge Richard Freeman recessed the court for the final time preceding jury instruction and deliberation. In so doing, the judge reiterated his admonition to the jury that until deliberation they were prohibited from discussing the case, even among themselves. The judge further instructed jurors to immediately inform him of any breach of this order.

Upon return from the recess, the judge informed counsel that his chambers received a telephone call from an unidentified man claiming to be a juror in this case. The anonymous caller stated that he overheard a discussion in the jury room to the effect that the defendants in the case could not pay their lawyers and that defendant Rowe was no longer in the entertainment promotion business. A sequestered voir dire of male jurors revealed that juror Adams placed the call. Adams identified the speaker in the jury room as juror Ford. Upon the court's inquiry Ford admitted to stating that Rowe was no longer in the entertainment production business but denied stating that the defendants could not afford to pay their attorneys.

To definitively determine what was heard by whom, the judge conducted a second sequestered voir dire examination of the entire panel. The result of which revealed that, in addition to Adams, only second alternative juror Thompson heard remarks made by Ford.

Juror Ford was held in contempt, fined, and dismissed. Thereafter, Judge Freeman called the remaining jurors back to the courtroom and informed them that whether a defendant's counsel was government appointed or personally paid was irrelevant to the determination of guilt. The jurors were then asked whether their ability to decide the case solely upon the evidence presented at trial was in any way compromised or impaired by out of court statements heard in the case. Since none re-

---

* Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

sponded, the judge then instructed the jury and they retired to the jury room to await deliberation. First alternate juror Touhy replaced dismissed juror Ford. Since this made twelve, second alternative juror Thompson was excused. Thus, of the three people who either made or overheard the remarks in question, only juror Adams, the juror who complied with the judges instructions by first bringing Ford's statements to the court's attention, remained on the jury.

## II.

■ In *Patterson v. Colorado*, 205 U.S. 454, 462, 27 S.Ct. 556, 558, 51 L.Ed. 879 (1907) Justice Holmes observed that "[t]he theory of our system is that the conclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence, whether of private talk or public print." Indeed, this "theory" that the jury's verdict be based solely upon the evidence offered at trial "goes to the fundamental integrity of all that is embraced in the constitutional concept of trial by jury." *Turner v. Louisiana*, 379 U.S. 466, 472, 85 S.Ct. 546, 549, 13 L.Ed.2d 424 (1965). This is so because only evidence offered against the defendant at the witness stand in a public courtroom receives the judicial protection of the defendant's sixth amendment right of confrontation, cross-examination, and counsel. *Id.* Mindful of this axiom, we meticulously review incidents involving jury exposure to information adduced outside of trial. Concurrently, however, we recognize that since "it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote ... due process does not require a new trial every time a juror has been placed in a potentially compromising situation." *Smith v. Phillips*, 455 U.S. 209, 217, 102 S.Ct. 940, 946, 71 L.Ed.2d 78 (1982) "Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." *Id.* With these principles in mind we articulate and apply the test which determines whether Sixth Amendment fair trial rights are so violated by a jury's exposure to extraneous material or influence that a new trial is warranted.

## III.

■ When jurors consider extrinsic evidence, we require a new trial if the evidence poses a *reasonable possibility of prejudice* to the defendant. *United States v. Perkins*, 748 F.2d 1519, 1533 (11th Cir. 1984); *United States v. Howard*, 506 F.2d 865 (5th Cir.1975). Prejudice is not presumed. The defendant has the burden of demonstrating prejudice by a preponderance of credible evidence. *United States v. Winkle*, 587 F.2d 705, 714 (5th Cir.1979).[1] "Such prejudice may be shown by evidence that extrinsic factual matter tainted the jury's deliberations." *Id.*[2] However, since it is the court's duty to ensure that the jury verdict was in no way tainted by improper outside influences, the court must investigate the asserted impropriety upon merely a colorable showing of extrinsic influence. *Id.* See also, *Sheppard v. Maxwell*, 384 U.S. 333, 362–63, 86 S.Ct. 1507, 1522, 16 L.Ed.2d 600 (1966). Subject only to Federal Rule of Evidence 606(b),[3] the court may

---

1. In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (*en banc*), this court adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981).

2. Where, as in this case, the discovery of out of court influence is discovered before the jury verdict, the inquiry is whether the extrinsic factual matter would likely taint the jury's deliberation.

3. Fed.R.Evid. 606(b) provides:
Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concern-

use whatever inquisitorial tools are necessary and appropriate to determine prejudice. *United States v. Savage,* 701 F.2d 867, 871 (11th Cir.1983). If after this inquiry the court determines that the defendant met his burden of showing by a preponderance of the evidence the likelihood of jury prejudice, the burden shifts to the government to prove that the consideration of the extrinsic evidence was harmless. *United States v. Perkins,* 748 F.2d at 1533; *United States v. Howard,* 506 F.2d at 869. In recognizing the degree of prejudice required and the government's burden to establish harmless error, the strength of the government's case has a bearing on the issue of prejudicial error. *United States v. Spurlock,* 811 F.2d 1461, 1463 (11th Cir. 1987). Also relevant is the nature of the information learned by the jurors and the manner in which it was revealed. *Government of Virgin Islands v. Dowling,* 814 F.2d 134, 138 (3rd Cir.1987). Finally, the standard by which we review the district court's determination of whether the defendants were prejudiced is a factual one committed to the court's "large discretion." *Marshall v. United States,* 360 U.S. 310, 312, 79 S.Ct. 1171, 1173, 3 L.Ed.2d 1250 (1959).

## IV.

The factual circumstances of this case, while establishing a colorable showing of extrinsic influence meriting judicial inquiry, clearly do not establish the sort of prejudice meriting a new trial. Indeed, based on the nature of the extrinsic influence and the extent of juror exposure, these facts do not even rise to the level of significance requiring a government showing of harmlessness. Since both statements heard by Adams were to the effect that the defendants were penurious, these statements could as easily have evoked sentiments generating leniency as they could have engendered an inference of guilt. In-

digence simply is not a motive strongly ascribed to the execution of an elaborate fraud. If this were a case involving the theft of a loaf of bread, the effect of the influence would be strong in both directions. In this case, however, where the defendants participated in a complex conspiracy to defraud a leading insurance company of a sum in excess of one hundred thousand dollars, any inference of guilt associated with the defendants' poverty is simply too attenuated to create the reasonable possibility of prejudice required for the grant of a new trial. In addition, this colorably prejudicial statement was heard by only one juror who deliberated in this case. Indeed, this is the very juror who, in compliance with his oath and the judge's instructions, first brought the extrinsic statement to the court's attention. Since "one who is trying as an honest man to live up to the sanctity of his oath is well qualified to say whether he has an unbiased mind in a certain matter,"[4] and since this juror acknowledged his ability to proceed in this case impartially, considering only the evidence presented at trial, we are confident that the defendants were tried by a fair and impartial jury free of the taint of extrinsic influence. Accordingly, we conclude that the district court did not abuse its discretion in finding that the extrinsic evidence heard by one conscientious juror did not so taint the jury as to create a reasonable possibility of prejudice to the defendants requiring a new trial.

AFFIRM.

---

ing a matter about which he would be precluded from testifying be received for these purposes.
This rule is relevant only in those inquiries which occur after the return of a verdict or issuance of an indictment. *See United States v.*

*Badolato,* 710 F.2d 1509, 1515 (11th Cir.1983); *United States v. Howard,* 506 F.2d at 869.

4. *Dennis v. United States,* 339 U.S. 162, 171, 70 S.Ct. 519, 523, 94 L.Ed. 734 (1950).