[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 18, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-12720
Non-Argument Calendar
_____

D. C. Docket No. 05-60242-CR-JIC

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANTONIO CRUZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(May 18, 2007)**

Before DUBINA, CARNES and KRAVITCH, Circuit Judges.

PER CURIAM:

I.

Antonio Cruz appeals his conviction for drug and firearm related offenses.

II.

Cruz was arrested after a Hallandale Beach police officer observed what appeared to be Cruz and two other individuals selling drugs in a parking lot outside an apartment complex. On September 22, 2005, Cruz was indicted for possession with intent to distribute crack cocaine near a playground, in violation of 21 U.S.C. §§ 841 and 860 (Count I); carrying a firearm in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c) (Count II); and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g) (Count III).

At the beginning of Cruz's trial, the court learned that a security officer had told several jurors not to wear their badges outside the courthouse because a female juror had been attacked. This information then filtered through the entire jury. Defense counsel stated the he was concerned the jury would draw conclusions about Cruz given that he was charged with drug and firearm offenses. The district court disagreed, but believed a curative instruction might be appropriate. The district court then instructed the jury that it was unaware of any problems or attacks, and asked whether any of the jurors were concerned. None of the jurors expressed any concern, except one juror did state that he did not wish his name to

be part of the public record. The district court agreed to seal the names and refer to jurors by number. Defense counsel argued that this would not cure the harm, and he requested a mistrial. The district court denied the motion, finding that sealing the names alleviated any concerns.

During the trial, the government called Hallandale Beach Police Department special operations officer Thomas Honan. Honan testified that the department had received some complaints about drugs, and, while patrolling the area in question, he observed people loitering in the parking lot outside an apartment building. He then obtained an unmarked car and returned to the location where he observed Cruz and two other individuals, Earl Jackson and Mitchell Beachum, engage in what appeared to be three separate drug transactions. In each transaction, the purchaser would hand money to Cruz, who would place the cash in his front right pocket, and then receive drugs from Jackson. After the third deal, Honan and backup officers converged on the parking lot and the men were arrested. Cruz was arrested by Officer Marsha Roaden, who conducted a pat-down and found a firearm.

At the police station, an officer searched Cruz and found money in his right front pocket. Cruz was then taken to another area of the station and strip searched. While this search was occurring, Honan heard a struggle and entered the room

where Cruz was being searched. Honan heard Cruz say that he had swallowed the "rock," which Honan knew to be the street name of crack. According to Honan, drug dealers sometimes store crack in their mouth and swallow it if police try to search them. He also testified, however, that he did not see Cruz put drugs in his mouth or take drugs out of his mouth at any time during the surveillance. Police did find drugs on Jackson and Beachum, including 1.9 grams of crack on Jackson.

Officer Thomas Montellancio testified that he conducted the search of Cruz at the station. He explained that when he took Cruz to another room for a strip search, he removed Cruz's handcuffs. Cruz then put his hands to his mouth and Montellancio noticed a white rock-like object. He ordered Cruz to spit it out, but Cruz closed his mouth and chewed. When ordered to spit it out, Cruz stated several times that he had swallowed it. Montellancio opened Cruz's mouth and saw a milky white substance on his tongue.

ATF Agent Richard Young also testified at trial. He testified regarding the firearm found on Cruz. During his testimony, he referred to the weapon once as a "Saturday Night Special." Defense counsel objected, asserting that the statement was prejudicial and gave the impression the firearm was obtained illegally. Counsel then moved for a mistrial, or at least a curative instruction. The court concluded that the name was simply a name and was not prejudicial. The court

4

denied the motion for a mistrial and found that a curative instruction was unnecessary.

The government then reminded the district court that it intended to introduce evidence of prior bad acts. Prior to trial, the government had issued notice of its intent to admit evidence of three prior bad acts under Federal Rule of Evidence 404(b) to establish intent and lack of mistake. Cruz had objected, arguing that the evidence was prejudicial, irrelevant to the issue of intent, and too remote in time. At trial, the government sought to admit evidence of only one prior bad act, an incident from 1998 in which Cruz stored crack in his mouth before selling it to an undercover officer. The government argued that this evidence was relevant to show intent, absence of mistake, and Cruz's method of operation. Cruz's counsel renewed his objection. The district court found that the evidence was relevant and probative, and, therefore, overruled the objection. The district court did, however, issue a limiting instruction to the jury. Officer Andrew Raphael then testified that he had conducted an undercover drug buy from Cruz in 1998. According to Raphael, when he arrived for the buy, Cruz removed the drugs from his mouth and exchanged them for money.

At the conclusion of the trial, Cruz was convicted on all three counts. The court sentenced Cruz to 188 months on Counts I and III, to run concurrently, with a

consecutive 60-month sentence on Count II.

### III.

We review a district court's refusal to grant a mistrial for abuse of discretion. United States v. Newsome, 475 F.3d 1221, 1227 (11th Cir. 2007); United States v. Perez, 30 F.3d 1407, 1410 (11th Cir. 1994). A mistrial should be granted if the defendant's substantial rights are prejudicially affected. Newson, 475 F.3d at 1227. This occurs when there is a reasonable probability that, but for the remarks, the outcome of the trial would have been different. Id. In determining whether the defendant's substantial rights were affected, this court considers the context of the entire trial and whether any curative instruction was given. Id. Furthermore, when the record contains sufficient independent evidence of guilt, any error is harmless. United States v. Adams, 74 F.3d 1093, 1097-98 (11th Cir. 1996).

We review a district court's decision to admit evidence for abuse of discretion. United States v. Smith, 459 F.3d 1276, 1295 (11th Cir. 2006).

### IV.

A mistrial or new trial is required only if the extrinsic evidence known by the jury posed a reasonable possibility of prejudice to the defendant. United States v. Ronda, 455 F.3d 1273, 1299 (11th Cir. 2006); United States v. Perkins, 748 F.2d

6

1519, 1533 (11th Cir. 1984). The court must investigate the alleged impropriety, and the defendant has the burden to show that the jury has been exposed to extrinsic evidence or extrinsic contacts. Remmer v. United States, 347 U.S. 227, 229, 74 S.Ct. 450, 451, 98 L.Ed. 654 (1954); McNair v. Campbell, 416 F.3d 1291, 1307-08 (11th Cir. 2005), cert. denied, 126 S.Ct. 1828 (2006); United States v. Counsins, 842 F.2d 1245, 1247 (11th Cir. 1988). Once the defendant establishes that such exposure in fact occurred, prejudice is presumed and the burden shifts to the government to rebut the presumption. See Remmer, 347 U.S. at 229; McNair, 416 F.3d at 1307-08.[1] To rebut the presumption of prejudice, the government must show that the jurors' consideration of extrinsic evidence was harmless to the defendant. Remmer, 347 U.S. at 229; McNair, 416 F.3d at 1307-08. To evaluate whether the government has rebutted that presumption, we consider the totality of the circumstances surrounding the introduction of the extrinsic evidence to the

---

[1] Although prior precedent recognized the presumption of prejudice from Remmer, this Court, on at least two later occasions, has stated that prejudice is not presumed even when jurors considered extrinsic evidence. United States v. Rowe, 906 F.2d 654, 656-57 (11th Cir. 1990); United States v. De La Vega, 913 F.2d 861, 870 (11th Cir. 1990). In Martinez, we recognized "the apparent conflict between the standard pronounced in Rowe and the unambiguous mandate of Remmer." Martinez, 14 F.3d at 550 n.3. We declined to resolve the conflict because it had no bearing on the outcome in Martinez. Id.

As in Martinez, the presumption of prejudice does not drive the outcome of this appeal. Even granting Appellant the presumption of prejudice, we conclude that the government has sufficiently rebutted that presumption. Accordingly, we again decline to consider the issue further.

jury.  Remmer, 347 U.S. at 229-30; McNair, 416 F.3d at 1307-08.  The factors we consider "include (1) the nature of the extrinsic evidence; (2) the manner in which the information reached the jury; (3) the factual findings in the district court and the manner of the court's inquiry into the juror issues; and (4) the strength of the government's case."  See McNair, 416 F.3d at 1307-08.

Cruz first argues that he was denied a fair and impartial jury when the district court denied his motion for a mistrial because the jurors were influenced and biased by the comment that other jurors had been attacked.  Nothing in the statement by the security guard to the jury, however, connected the alleged attack to Cruz.  Furthermore, when the district court questioned the jurors, only one juror expressed concern about his name being made public.  Finally, after the district court assured the jury that their names would be sealed, none of the jurors expressed any further concern.  As such, it does not appear that the security guard's comments prejudiced the jury.  Even if we were to assume prejudice, the government rebutted the presumption.  The government's case was strong, including officer Honan's observation of Cruz participating in three drug deals and placing money from the deals in his right front pocket, where cash was later found, the discovery of a firearm when Cruz was searched by officer Roaden, Cruz's admission that he swallowed the drugs, and the observation of officer Montellancio

that Cruz shoved something in his mouth and that there was a milky substance on Cruz's tongue. Moreover, each juror confirmed that they did not have any concerns and could be impartial. Ronda, 455 F.3d at 1300-01; United States v. Gabay, 923 F.2d 1536, 1542-43 (11th Cir. 1991) (considering the court's actions to ensure the jury was impartial). Accordingly, the district court did not abuse its discretion in denying the mistrial on these grounds.

Cruz next argues that a mistrial should have been granted when one of the witnesses referred to the gun as a "Saturday Night Special." Contrary to Cruz's argument, there is no improper or prejudicial connotation associated with this term for the gun. The term is often used to describe small, inexpensive handguns. See United States v. Coleman, 22 F.3d 126, 131 n.4 (7th Cir. 1994). Moreover, it was a single and isolated comment. See United States v. Ruz-Salazar, 764 F.2d 1433 (11th Cir. 1985); United States v. Benz, 740 F.2d 903 (11th Cir. 1984). Even if the comment was improper, we should not reverse "when there is other significant evidence of guilt which reduces the likelihood that the otherwise improper testimony had a substantial impact upon the verdict of the jury." United States v. Perez, 30 F.3d 1407, 1411 (11th Cir. 1994) (internal citations and quotation marks omitted). As discussed above, the government's evidence against Cruz was strong. Accordingly, the district court did not abuse its discretion by denying the motion

for a mistrial on these grounds.

Finally, Cruz argues that the evidence related to his prior conviction was prejudicial and should not have been admitted. He argues that the prior conviction was seven years earlier and too remote in time and that in the instant case he was not the person supplying the drugs, and, therefore, the prior crime did not establish any intent.

Under Rule 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." Fed. R. Evid. 404(b). Evidence is admissible under Rule 404(b) if: "(1) it is relevant to an issue other than the defendant's character; (2) the prior act is proved sufficiently to permit a jury determination the defendant committed the act; and (3) the evidence's probative value cannot be substantially outweighed by its undue prejudice, and it must satisfy Federal Rule of Evidence 403." United States v. Eckhardt, 466 F.3d 938, 946 (11th Cir. 2006); Jernigan, 341 F.3d 1273, 1280 (11th Cir. 2003). Cruz does not challenge whether the prior convictions were proven sufficiently, and, therefore, only the first and third prongs of the Eckardt analysis are at issue.

10

Here, the prior conviction was relevant to show intent and absence of mistake. Cruz's defense was that here he was merely present, was not a supplier, and was not involved in the drug buys. As such, Cruz placed his intent and lack of mistake at issue, and the evidence was admissible to prove these elements. Jernigan, 341 F.3d at 1281-82. We also conclude that the time span between Cruz's 1998 conduct and the conduct here does not render the previous incident too remote for proper consideration. See, e.g., United States v. Calderon, 127 F.3d 1314, 1332 (11th Cir. 1997) (a six-year span did not render the extrinsic acts too remote for proper consideration); United States v. Lampley, 68 F.3d 1296, 1300 (11th Cir. 1995) (the district court's admission of testimony regarding prior drug dealing fifteen years before was not an abuse of discretion); United States v. Pollock, 926 F.2d 1044, 1048 (11th Cir. 1991) (a five-year span did not render the extrinsic conduct too remote for proper consideration). Furthermore, the probative value of the evidence outweighed the prejudicial value. The evidence established that Cruz used this technique to store and conceal drugs in the past. The evidence also corroborated the officers' testimony that Cruz put something in his mouth and stated that he swallowed the drugs. Thus, the evidence was relevant and probative. Moreover, the district court instructed the jury that the evidence was admissible for the limited purpose of showing intent and absence of mistake, and not to determine

11

whether Cruz committed the instant offense.  <u>Jernigan</u>, 341 F.3d at 1282.

Therefore, the court did not abuse its discretion by admitting the prior conduct.

Even had the court erred in admitting the prior conduct, we conclude that it was

harmless error in light of the overwhelming evidence against Cruz.  <u>United States</u>

<u>v. Gunn</u>, 369 F.3d 1229, 1236 (11th Cir. 2004); <u>United States v. Harriston</u>, 329

F.3d 779, 789 (11th Cir. 2003).

V.

Accordingly, we **AFFIRM**.