[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-15447
_____

D.C. Docket No. 1:13-cr-00048-RWS-ECS-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

KENNETH J. ENRICO,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(February 17, 2016)

Before WILSON, WILLIAM PRYOR, and GILMAN,* Circuit Judges.

WILSON, Circuit Judge:

---

* Honorable Ronald Lee Gilman, United States Circuit Judge for the Sixth Circuit, sitting by designation.

Defendant-appellant Kenneth J. Enrico was convicted on one count of conspiracy to commit mail and wire fraud, in violation of 18 U.S.C. §§ 1341, 1343, and 1349; three counts of mail fraud, in violation of 18 U.S.C. § 1341; and thirteen counts of wire fraud, in violation of 18 U.S.C. § 1343.  These convictions stemmed from his involvement in a fraudulent loan scheme, in which he charged prospective borrowers an application fee to obtain a mortgage from a private lender, knowing the loan would never be financed.  Enrico's conviction of conspiracy rested on circumstantial evidence that he worked with a second person—"Joe"—in perpetrating his scheme.

The district court sentenced Enrico to 144-months imprisonment, with three years of supervised release to follow, and ordered him to pay $1,079,150 in restitution.  On appeal, Enrico argues that (1) the district court improperly denied a motion for mistrial based on extrinsic influence on the jury; (2) there was insufficient evidence to support his conviction of conspiracy; and (3) his sentence is both procedurally and substantively unreasonable.  After a thorough review of the parties' briefs and having had the benefit of oral argument, we conclude that the district court committed reversible error only as to the entry of a two-level enhancement under § 3B1.1(c) of the United States Sentencing Guidelines (the Guidelines).  Therefore, we affirm in part, reverse in part, and remand for resentencing consistent with this opinion.

I

Enrico's first challenge on appeal pertains to the district court's denial of his motion for mistrial, which Enrico raised after his attorney was subjected to a pat-down search in the vestibule of the courthouse, in plain view of two jurors standing in the security line.  Counsel argued that the procedure was prejudicial to the jury because Assistant United States Attorneys have security badges that permit them to enter the building without further security screening, while defense attorneys do not, and the pat-down created an adverse inference of criminality and overall untrustworthiness.  The district court denied the motion without investigating or questioning the jury.

We review for an abuse of discretion the denial of a motion for mistrial based on purported extrinsic influence on the jury.  *United States v. Alexander*, 782 F.3d 1251, 1256 (11th Cir. 2015).

> In a criminal case, any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is . . . deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties.

*United States v. Khanani*, 502 F.3d 1281, 1291 (11th Cir. 2007) (alteration in original) (internal quotation marks omitted).  "A juror's exposure to extraneous material or influence requires a new trial if the exposure 'poses a reasonable

3

possibility of prejudice to the defendant.'" *Id.* (quoting *United States v. Rowe*, 906 F.2d 654, 656 (11th Cir. 1990) (emphasis omitted)). The defendant bears the burden of showing that extrinsic contact with the jury actually occurred, triggering a presumption of prejudice; the burden then shifts to the government to show that the contact was harmless. *See Boyd v. Allen*, 592 F.3d 1274, 1305 (11th Cir. 2010).

We hold that the district court did not abuse its discretion in determining that Enrico failed to make a colorable showing of extrinsic contact that undermines the presumption of jury impartiality. Although the United States Marshals Service perhaps could have been more discreet by offering a private pat-down search, that does not mean their procedures constituted an extrinsic contact with the jury. There were no verbal communications alleged, and participating in a security screening is not expressive conduct. *Cf. Khanani*, 502 F.3d at 1291–92. Moreover, the screening procedure simply did not relate to the charges or even to the courtroom procedure involved. *See id.* It was a mundane requirement of all audience members, jurors, and defense counsel who entered the courthouse. That two jurors witnessed defense counsel go through standard security procedures does not create a "reasonable possibility of prejudice to the defendant." *See United States v. Ronda*, 455 F.3d 1273, 1299 (11th Cir. 2006); *Boyd*, 592 F.3d at 1305–06. Therefore, we affirm the district court's denial of the motion for a mistrial.

4

II

Enrico also challenges the sufficiency of the evidence supporting his conspiracy conviction. At trial, three of the four individuals Enrico recruited to help sell his loan program—Gaylin Ware, Arthur Geiss, and Scott O'Neill— testified that Enrico repeatedly mentioned an individual named "Joe" and indicated that Joe was responsible for processing and closing the loans. Key to the government's case were recorded telephone calls between Geiss and Enrico, specifically one in which Enrico said he was on his way to meet investors, including Joe. In addition, Geiss testified at trial that during one unrecorded phone call with Enrico, Enrico put someone else on the line who stated "the files were being worked on." Geiss inferred that this man was Joe. No participant in the scheme met or otherwise interacted with Joe, and the FBI agents that searched Enrico's apartment found no evidence confirming Joe's existence. They did, however, recover almost $200,000 in cash, as well as boxes of loan applications, with no indication that the loans were processed or closed. Defense counsel's initial and renewed motions for acquittal on the basis of the above facts were denied by the district court.

We review de novo whether there was sufficient evidence to sustain a conviction, drawing all reasonable inferences in favor of the verdict and viewing the evidence in the light most favorable to the government. *See United States v.*

*Bailey*, 778 F.3d 1198, 1202 (11th Cir. 2015).  "Evidence is sufficient to support a conviction if a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt."  *Id.*  To affirm the defendant's conviction, "the evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt."  *Id.* (alteration adopted).  "We uphold the jury's verdict unless no trier of fact could have found guilt beyond a reasonable doubt."  *United States v. Tinoco*, 304 F.3d 1088, 1122 (11th Cir. 2002) (internal quotation mark omitted).

Conspiracy requires "proof of (1) . . . an agreement between two or more persons to achieve an unlawful objective; (2) . . . knowing and voluntary participation in the agreement; and (3) . . . an act in furtherance of the agreement."  *United States v. Jennings*, 599 F.3d 1241, 1250–51 (11th Cir. 2010) (alterations in original) (internal quotation mark omitted).  We do not require that the government demonstrate the existence of a formal agreement, *see United States v. Vernon*, 723 F.3d 1234, 1273 (11th Cir. 2013), or provide evidence of a co-conspirator's name, *see United States v. Rodriguez*, 765 F.2d 1546, 1552 (11th Cir. 1985).  Rather, we permit the prosecution to rely on circumstantial evidence in satisfying its burden of showing the second person exists and there was a meeting of the minds to commit an unlawful act.  *See Vernon*, 723 F.2d at 1273–74; *Rodriguez*, 765 F.2d at 1551.

We conclude that there was sufficient evidence supporting Enrico's conspiracy conviction.  Based on Geiss's testimony regarding the unrecorded phone call, a reasonable trier of fact could have concluded that Joe existed (Geiss testified that he heard Joe's voice on the line); that there was an agreement between Joe and Enrico to commit a criminal offense (the context of the phone call was to convince Geiss that they were processing the loans); and that acts were taken in furtherance of the scheme (Joe claimed to be working on the files, thus prompting Geiss and the other recruited brokers to continue advertising the program).

The context of the phone call is central to our conclusion.  The record reflects that Geiss understood that Enrico put the unnamed individual on the phone specifically to convince Geiss "that there was some credibility behind [the loan scheme]," and Joe furthered this objective by claiming that "the files were being worked on."  Thus, viewing the evidence in a light most favorable to the government and drawing all reasonable inferences in favor of the verdict, a reasonable juror could conclude that Enrico and Joe agreed to work on the scheme together, with Enrico gathering and Joe purportedly processing the loans, and furthered that scheme by making statements to convince Geiss to continue advertising the loan program.  Therefore, we affirm the conviction of conspiracy.

III

7

Lastly, Enrico challenges the procedural and substantive reasonableness of his sentence. At sentencing, the district court imposed a sixteen-level enhancement for losses exceeding $1 million and a two-level enhancement under U.S.S.G. § 3B1.1(c) for Enrico's role in the offense in light of evidence that Enrico was responsible for managing the activities of the organization and at least some of its assets. After reviewing the factors contained in 18 U.S.C. § 3553(a), the district court imposed 144-months imprisonment and ordered restitution in the amount of $1,079,150. Enrico challenges the district court's determination regarding (a) the amount of loss; (b) the enhancement for his role in the offense; and (c) the appropriateness of a twelve-year sentence for a first-time offender.

We review the district court's interpretation of the Guidelines de novo, its findings of fact for clear error, *see United States v. Campbell*, 491 F.3d 1306, 1315 (11th Cir. 2007), and the substantive reasonableness of a sentence for an abuse of discretion, *see United States v. Overstreet*, 713 F.3d 627, 636 (11th Cir. 2013). We conclude that the district court did not err in applying a sixteen-level enhancement to Enrico's sentence based on the amount of loss, but did err in applying the two-level enhancement under § 3B1.1(c). Therefore, we vacate the two-level enhancement and remand to the district court for a resentencing hearing consistent

with this opinion on the narrow issue of whether Enrico's role in the offense warrants a two-level enhancement.[1]

## A.  Amount of Loss

Enrico argues that the district court incorrectly relied on client lists to estimate the amount of loss stemming from his fraudulent scheme, and that the court instead should have looked to bank records that stated the amount of money he *gained* from the scheme because the bank records were more reliable.  Under § 2B1.1 of the Guidelines, as effective at the time of Enrico's sentencing, when the loss involved more than $400,000, the base offense level increases by fourteen; if the loss involved more than $1,000,000, the offense level increases by sixteen.  *See* § 2B1.1(b)(1)(H)–(I) (2014).  Enrico asserts that, had the court properly relied on the bank statements rather than the client lists, he would have received only a base offense increase of fourteen.

We hold that the district court did not clearly err in relying on the client lists, rather than bank statements, to calculate the amount of loss the victims suffered.  The Guidelines clearly state in their Application Notes that "gains" should only be used "as an alternative measure of loss . . . if there is a loss but it reasonably cannot be determined."  § 2B1.1 cmt. n.3(B).  We have held that "the loss amount does

---

[1] In light of this determination, we do not address Enrico's claim that his sentence was substantively unreasonable.  On remand, the district court will consider the § 3553(a) factors in issuing Enrico's new sentence.  *See United States v. Estrada*, 777 F.3d 1318, 1323 (11th Cir. 2015) (per curiam) (ordering that, on remand for resentencing, "the district court shall consider all appropriate 18 U.S.C. § 3553(a) factors in determining a reasonable sentence").

not need to be precise and may only be a reasonable estimate of the loss based on the available information." *United States v. Woodard*, 459 F.3d 1078, 1087 (11th Cir. 2006) (per curiam). Here, the client lists—which, we note, were submitted into evidence without objection—provide more than merely a reasonable estimate of the losses suffered. The client lists from Total Choice Corporation, the corporation through which Ware sold loans, and SCS Private Funding, the corporation through which O'Neill and Geiss sold loans, themselves totaled more than $1 million.[2] Moreover, in reality, the client lists likely *underestimate* the total losses suffered because they do not account for any other earnest money forfeited to Enrico's scheme, penalties for missed closing dates, etc. Thus, the government established by a preponderance of the evidence that losses exceeded $1 million. *See United States v. Bradley*, 644 F.3d 1213, 1290 (11th Cir. 2011). Accordingly, we affirm the sixteen-level sentencing enhancement under § 2B1.1.

## B. Role in the Offense

In addition, Enrico contends that the district court erred in entering a two-level enhancement under § 3B1.1(c) of the Guidelines for his role in the offense. We agree. The district court incorrectly concluded that the two-level enhancement

---

[2] This calculation omits any losses that Kimberly Williams's clients suffered. The record reflects that Enrico recruited Williams, like Ware, to sell his loan program, but she did not testify at trial. Williams had at least 25 customers, and Enrico's bank account reflects that he deposited 16 checks from Williams's company, totaling $46,000.

under that subsection could be premised on the management of the criminal assets alone.

Under § 3B1.1(c), "[i]f the defendant was an organizer, leader, manager, or supervisor in [the] criminal activity," the judge may increase the offense level by two. An enhancement under § 3B1.1 requires the government to prove by a preponderance of the evidence that there was at least one other criminally liable participant in the scheme. *See* § 3B1.1(c) cmt. n.2.; *United States v. Glover*, 179 F.3d 1300, 1302–03 (11th Cir. 1999). The sentencing judge may not premise a base-level enhancement under § 3B1.1 "solely on a finding that [the] defendant managed the assets of a conspiracy." *See Glover*, 179 F.3d at 1302–03.

We hold that the district court erred by basing its enhancement under § 3B1.1(c) on Enrico's control of the criminal assets and failing to make any affirmative determination that Enrico managed or supervised Joe.[3] The record reflects that the district court specifically asked both parties for Eleventh Circuit precedent to determine whether an enhancement under § 3B1.1(c) was appropriate in the absence of other criminally culpable participants, but neither defense counsel nor the Government cited any cases. *See* Doc. 96, at 9. In concluding, without the

---

[3] The record reflects that the district court specifically stated: "[W]e don't know whether Joe was directing or being directed. So I think the directing of a participant gets problematic, but I think managing the organization is very clear and very obvious and so for that reason I will . . . impose a two-level enhancement under 3B.1C, finding that [Enrico] clearly was responsible for the management of the activities of this organization, as well as some of the assets of the organization." Doc. 96, at 14–15.

benefit of guiding precedent, that an enhancement was appropriate under § 3B1.1(c), the district court expressly relied on the second sentence of the Guidelines' comments to that subsection. *See id.* at 14–15. However, *Glover* explicitly rejects enhancements premised on a finding of asset management alone. *See* 179 F.3d at 1302–03. Therefore, the district court erred in its conclusion that the enhancement applied regardless of Enrico's control over another criminally culpable participant.

This error was not harmless. If there is insufficient evidence to determine that Enrico managed or supervised Joe, then his relevant base offense level would be 31, not 33, and the Guidelines would recommend a sentence of less than 144 months.[4] Therefore, we vacate the two-level enhancement under § 3B1.1(c) and remand to the district court for reconsideration of whether the evidence supports a two-level enhancement for Enrico's role in the offense.[5] Importantly, we note that the district court may not base its determination of that issue on the involvement of Ware, Geiss, and O'Neill. These individuals are irrelevant actors for purposes of the enhancement because they were not presented as criminally liable participants.

---

[4] Under the 2014 version of the Guidelines, a base offense level of 31 for an individual in Criminal History Category I is 108 to 135-months imprisonment. *See* U.S.S.G. ch. 5, pt. A, Sentencing Table. Enrico's current sentence of 144-months imprisonment exceeds even a sentence at the top of that recommended range.

[5] Our conclusion today does not impinge the discretionary capacity of the district court. On remand, the district court could conclude that the same sentence is warranted by applying a discretionary two-level departure. However, under *Glover*, the court may not apply a mandatory two-level enhancement under § 3B1.1(c) based on the defendant's control over criminal assets.

Rather, the district court's conclusion must be based on whether the government provided sufficient evidence that Enrico "organize[d], [led], manage[d], or supervis[ed]" his co-conspirator, Joe.  *See* § 3B1.1(c).

For the foregoing reasons, we affirm in part, reverse in part, and remand for resentencing consistent with this opinion.

**AFFIRMED in part, REVERSED in part, and REMANDED.**