**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Shawn Joseph PESSEFALL,**
**Defendant–Appellant.**

**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Lawrence WHITTAKER, Defendant–**
**Appellant.**

**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Roy Vinson RICKMAN, Defendant–**
**Appellant.**

Nos. 92–2155, 92–2551 and 92–2732.

United States Court of Appeals,
Eleventh Circuit.

Aug. 1, 1994.

Rehearing Denied Sept. 16, 1994 in
Nos. 92–2551 and 92–2732.

 

Matthew Perry, Asst. Federal Public Defender, Tampa, FL, for Pessefall.

Edward Page, Asst. U.S. Atty., Tampa, FL, for U.S.

Jana V. Jay, Naples, FL, for Whittaker.

Donald F. Samuel, Atlanta, GA, for Rickman.

Before HATCHETT and EDMONDSON, Circuit Judges, and MELTON *, Senior District Judge.

HATCHETT, Circuit Judge:

In this cocaine conspiracy case, we affirm the convictions and sentences of all appellants.

---

* Honorable Howell W. Melton, Senior U.S. District Judge from the Middle District of Florida,

## FACTS

In March, 1991, a multi-unit task force initiated an investigation of Roy Vinson Rickman to determine whether he was involved in cocaine off-loading in the waters off of Manatee County, Florida. At the time Rickman was a Florida Marine Patrol Officer. The task force began investigating Rickman after Raymond Parker, who had earlier been arrested, began rendering substantial assistance in the investigation and prosecution of other persons. During this process, Parker informed government agents that Rickman had agreed to protect a load of marijuana in 1983 and had helped Parker fish illegally in the Manatee River.

In July, 1991, the Drug Enforcement Administration (DEA) enlisted Parker to aid them in setting up a reverse sting off-load operation where Rickman would protect the off-loading. Parker solicited the help of Lawrence Whittaker. On July 11, 1991, Parker gave Rickman $2,000 for his assistance in the cocaine off-load. The parties scheduled the off-load for the early morning hours of August 7, 1991. On the evening of August 6, 1991, Whittaker approached Joseph Pessefall and requested his help in off-loading the cocaine shipment. Parker told Whittaker that the boat would be loaded with twelve bundles of cocaine and that a Florida Marine Patrol officer would be protecting them.

In the early morning hours of August 7, 1991, Rickman spotted Joe Bernhard, a water patrol deputy with the Manatee County Sheriff's Office, at Sneads Island preparing to patrol in the area. Rickman discouraged Bernhard from going on patrol, and Bernhard left the scene. Rickman then began to patrol the area while the boat with the cocaine came ashore at nearby Sneads Island.

After the off-load, Rickman telephoned Parker and told him that he was leaving for vacation and that he would contact Parker when he returned. On August 25, 1991, Rickman returned from vacation and called Parker asking whether Parker had heard anything or had any news for him. On September 6, 1991, Rickman met with Parker at

sitting by designation.

Parker's house. During this tape recorded meeting, Parker showed Rickman a duffel bag that contained fifty kilograms of fake cocaine.

On September 11, 1991, Parker telephoned Rickman and asked him to meet at the local Motel 6 so that Rickman could be paid for his services. After Rickman arrived and discussed how much money he thought he deserved, task force officers arrested Rickman with both hands full of money. Later that same morning, task force officers arrested Parker, Pessefall, and Whittaker at the same motel.

## PROCEDURAL HISTORY

On October 16, 1991, a grand jury indicted Pessefall, Rickman, and Whittaker in a two count, superseding indictment. Count I charged each defendant with conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846. Count II charged Rickman with possession of a firearm during and in relation to the commission of the felony charged in Count I of the indictment, in violation of 18 U.S.C. § 924(c). Pessefall and Whittaker pleaded guilty to Count I of the superseding indictment, and a jury found Rickman guilty on both counts. The district court denied Rickman's motion for a new trial. The district court sentenced Pessefall to 10 years imprisonment, Whittaker to 188 months imprisonment, and Rickman to 300 months imprisonment on Count I, and 60 months imprisonment on Count II to be served consecutively.

## CONTENTIONS OF THE PARTIES

Whittaker contends that the district court erred when it enhanced his base offense level on the premise that a coconspirator's use of a firearm was foreseeable.

Rickman contends that the district court erred in allowing the government to present evidence of conversations from eight years earlier as similar act evidence and in failing to take corrective measures when it discover-

ed that the jury had extrinsic evidence in the jury room during a portion of its deliberations.

Pessefall and Whittaker contend that the district court erred in its determination of the amount of cocaine attributable to each at sentencing. The government contends that the district court properly ruled on all issues on appeal.

## ISSUES

The appellants present the following issues: (1) whether the district court erred in holding Whittaker accountable for a coconspirator's possession of a firearm during the charged conspiracy; (2) whether the district court erred in failing to take corrective action when it discovered that the jury inadvertently had the case agents' reports in the jury room during a portion of its deliberations; (3) whether the district court erred in admitting evidence of Rickman's similar acts; and (4) whether the district court erred in attributing 250 kilograms of cocaine to Pessefall and Whittaker at sentencing.[1]

## DISCUSSION

Firearm Possession

Whittaker contends that the district court erred in enhancing his sentence pursuant to U.S.S.G. § 2D1.1(b)(1) (1990). Section 2D1.1(b)(1) instructs sentencing courts to increase a defendant's base offense level by two levels if the defendant possessed a "dangerous weapon (including a firearm)" during a drug offense. The two level firearm enhancement is proper if the following conditions are met: "(1) the possessor is charged as a co-conspirator; (2) the defendant whose sentence is to be enhanced was a member of the conspiracy at the time of the firearm possession; and (3) the possession of the firearm was in furtherance of the conspiracy." *United States v. Martinez*, 924 F.2d

---

**1.** The appellants also raise the following issues: (a) Rickman contends that the district court erred in its jury instructions regarding suppression or fabrication of evidence; (b) Rickman and Whittaker contend that the district court erred in

denying a reduction in sentence for minimal role in the offense; and (c) Whittaker contends that the district court erred in not allowing him to withdraw his guilty plea. These issues have no merit and do not warrant further discussion.

209, 210 (11th Cir.1991) (citing *United States v. Otero*, 890 F.2d 366, 367 (11th Cir.1989)).

The district court enhanced Whittaker's base offense level pursuant to section 2D1.1(b)(1) after finding that Whittaker could have reasonably foreseen Rickman's possession of a firearm, that Whittaker wanted to bring a firearm, and that Whittaker knew firearms are generally used in connection with drug deals.

■ We review the district court's factual findings for clear error. *United States v. Louis*, 967 F.2d 1550, 1553 (11th Cir.1992). In this case, the government has satisfied all three conditions for the firearm enhancement. Whittaker does not dispute that the government charged Rickman as a coconspirator or that Whittaker was a member of the conspiracy at the time Rickman possessed the firearm. Whittaker argues that his sentence should not be enhanced because Rickman used a firearm during the drug offense without his knowledge. This court has held that "protestations that [the defendants] were in fact unaware of the firearm possession [of a co-conspirator] do[es] not upset the district court's finding that the possession of the firearm was reasonably foreseeable." *United States v. Martinez*, 924 F.2d 209, 210 (11th Cir.1991); *United States v. Otero*, 890 F.2d 366, 367 (11th Cir.1989). It was reasonably foreseeable that Rickman would use a firearm to protect the 250 kilogram off-load. *See United States v. Freyre–Lazaro*, 3 F.3d 1496, 1506 (11th Cir.1993) ("it was reasonably foreseeable that [coconspirator], in furtherance of the conspiracy, would carry a weapon while transporting thirteen kilograms of cocaine"). Thus the district court's finding that Whittaker possessed a firearm as a member of the cocaine conspiracy was not clearly erroneous.

### Extrinsic Evidence

■ Rickman contends that the district court erred when it failed to take corrective measures upon learning that the jury had inadvertently been exposed to extrinsic evidence. When confronted with allegations that a jury has been exposed to extrinsic evidence, the district court has broad discretion as to how to proceed, "including discretion with regard to the initial decision as to whether to interrogate the jurors." *United States v. Hernandez*, 921 F.2d 1569, 1577 (11th Cir.1991). Accordingly, we review a district court's determination of the effect of extrinsic evidence on a jury applying the abuse of discretion standard. *Hernandez*, 921 F.2d at 1577.

■ During deliberations in this case, the jury sent a note to the judge inquiring whether it should consider a document marked "Defendant's Exhibit Number 1," that appeared to be a summary of the case agents' notes. The judge immediately responded, instructing the jury that it should not consider the exhibit, and instructing the jury to return the document to the marshal. Rickman contends that he suffered prejudice from the jury's exposure to the reports because the reports contain hearsay evidence that would have been inadmissible if the government had attempted to introduce it at trial. The government counters that the district court correctly denied Rickman's motion for new trial because the case agents' reports were innocuous and cumulative of testimony presented at trial.

■ Once a defendant establishes that the jury had an extrinsic contact, the burden shifts to the government to demonstrate that the consideration of the extrinsic evidence was harmless. *United States v. Martinez*, 14 F.3d 543, 550 (11th Cir.1994); *United States v. Perkins*, 748 F.2d 1519, 1533 (11th Cir. 1984). "[P]rejudice is presumed the moment the defendant establishe[s] that 'extrinsic contact with the jury in fact occurred.'" *Martinez*, 14 F.3d at 550 (quoting *United States v. Caporale*, 806 F.2d 1487, 1503 (11th Cir.1986), *cert. denied*, 482 U.S. 917, 107 S.Ct. 3191, 96 L.Ed.2d 679 (1987)).

■ Because the jury had extrinsic evidence in the jury room, we assume prejudice and consider whether the government rebutted that presumption considering such factors as the "heavy burden on the government, the nature of the extrinsic information, the manner in which the information reached the jury, and the strength of the government's case." *Martinez*, 14 F.3d at 550.

■ The jury's consideration of extrinsic evidence requires a new trial "if the evidence poses a *reasonable possibility of prejudice* to the defendant." *United States v. Awan,* 966 F.2d 1415, 1432 (11th Cir.1992) (quoting *United States v. Rowe,* 906 F.2d 654, 656 (11th Cir.1990)). Applying the factors stated above, we find that the reports were cumulative of the testimony presented against Rickman at trial; that the jury's questions to the court reflect that the jury carefully followed the court's instructions to consider only those documents that the court had admitted into evidence; that the marshal inadvertently delivered the report to the jury room; and that the government presented substantial properly admitted evidence in support of Rickman's participation in the drug conspiracy. We conclude that the district court's failure to investigate allegations of jury misconduct was harmless because the jury's possession of the reports did not create a reasonable possibility of prejudice to Rickman.

Similar Acts

■ Rickman also contends that the district court erred in allowing testimony about conversations held over eight years prior to trial as evidence of similar acts. We review a district court's admission of evidence for abuse of discretion. *United States v. Perez–Garcia,* 904 F.2d 1534, 1544 (11th Cir.1990).

The district court allowed the government to introduce evidence that in 1981, Rickman allowed Parker to fish illegally in exchange for a boat, and that in 1983, Rickman agreed to help Parker protect a boat load of marijuana. Rickman argues that the district court erred in admitting this evidence because both episodes were "so remote in time, that the prejudice resulting from evidence far-outweighed any probative value." The government asserts that the district court properly admitted the similar act evidence to establish Rickman's intent and to explain conversations that were part of tape recordings admitted into evidence.

■ Under Federal Rule of Evidence 404(b) evidence of past wrongs is admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident...." In this case,

intent was a material issue because Rickman pleaded not guilty to the conspiracy charge. *See United States v. Cardenas,* 895 F.2d 1338, 1342 (11th Cir.1990) (when a defendant charged with conspiracy enters a not guilty plea, he makes intent a material issue in the case). Prior offenses may be admitted to prove intent if: (1) the extrinsic offense requires the same intent as the charged offense and the jury could conclude that the defendant committed the extrinsic offense; and (2) the court finds that the probative value of the evidence weighs more heavily than the prejudice the defendant would sustain if admitted. *Cardenas,* 895 F.2d at 1343. When a court is assessing whether the probative value of extrinsic evidence outweighs the threat of unfair prejudice, the court should consider factors such as the differences between the charged and extrinsic offenses, their temporal remoteness, and the government's need for the evidence to prove intent. *United States v. Diaz–Lizaraza,* 981 F.2d 1216 (11th Cir.1993).

■ In this case, one challenged extrinsic offense involved an agreement that Rickman would protect a boat load of marijuana for Parker. Rickman's role in the charged conspiracy was to protect the coconspirators during the off-loading. The extrinsic evidence involved the same mental state as the charged crime because both incidents involved protecting illicit drug activity. A jury could have concluded that Rickman was involved in both offenses based on the evidence. The second step in evaluating the admissibility of extrinsic evidence requires the court to weigh its probative value against the threat of unfair prejudice. The prior agreement to protect a boat load of narcotics is the exact conduct Rickman is being charged with in this case. While the extrinsic act occurred some eight years earlier than the charged crime, it is not too remote in light of the government's heavy burden of proving Rickman's intent to conspire to possess with intent to distribute cocaine. The government presented sufficient evidence to establish Rickman's intent to be involved in the drug conspiracy. Thus the district court did not abuse its discretion in admitting evi-

dence that Rickman had previously agreed to protect a boat load of marijuana.

■ The other extrinsic evidence Rickman claims the district court improperly admitted was testimony that he had allowed Parker to fish illegally in 1981. Rickman asserts that this conduct is wholly unrelated to any issue associated with his case. The government counters that the district court properly admitted the testimony to clarify tape recorded statements the court had previously admitted without objection from defense counsel. This court has ruled that extrinsic evidence may be admitted to explain conversations of other properly admitted evidence. *United States v. Williford,* 764 F.2d 1493, 1499 (11th Cir.1985). In this case the evidence that Rickman previously allowed Parker to fish illegally was inextricably intertwined with the tape recordings and was necessary to clarify tape recordings already admitted in evidence.

Quantity of Cocaine

■ We review the district court's determination of the quantity of drugs attributable to each defendant under the clearly erroneous standard. *United States v. Beasley,* 2 F.3d 1551, 1561 (11th Cir.1993).

Pessefall and Whittaker argue that the district court erred in attributing the full 250 kilograms of cocaine to them for sentencing. Pessefall argues that he is responsible for 49.15 kilograms of cocaine—the amount of authentic cocaine involved in the off-load. Whittaker maintains that quantity of cocaine, 250 kilograms, was not foreseeable to him and argues that the district court did not have a basis in the record for holding him accountable for 250 kilograms. The government responds that the district court did not err in holding both Pessefall and Whittaker responsible for 250 kilograms of cocaine because both helped unload the fake cocaine.

According to the sentencing guidelines, a defendant is responsible for "all acts and omissions committed ... by the defendant ... that occurred during the commission of the offense of conviction...." U.S.S.G.

§ 1B1.3(a)(1) (1990). The illustrations to section 1B1.3 explain that a defendant offloader of cocaine is accountable for the entire quantity imported, regardless of the number of bales the defendant actually unloaded, and "notwithstanding any claim on his part that he was neither aware of, nor could reasonably foresee", that the boat contained the large quantity of cocaine. U.S.S.G. § 1B1.3 (1990), illustration note (a).

■ The government must establish the quantity of drugs involved in a drug conspiracy by a preponderance of evidence. *United States v. Beasley,* 2 F.3d 1551, 1561 (11th Cir.1993). At Pessefall's sentencing hearing, the government presented testimony of a DEA agent who prepared the twelve duffle bags. The agent testified that each bag weighed between 40 and 60 pounds, with no bag weighing less than 44 pounds. The total weight of the twelve duffle bags at a *minimum* weight of 44 pounds would be 528 pounds, which equals approximately 239 kilograms.[2] At Whittaker's sentencing hearing, the only evidence of the amount of cocaine was the presentence investigation report (PSR), that stated Whittaker helped off-load 250 kilograms of cocaine. Thus the government satisfied its burden of establishing the quantity of cocaine involved in this drug conspiracy.

■ In this case, Pessefall and Whittaker plead guilty to importing 250 kilograms of cocaine. Their PSRs reflected the amount of purported cocaine involved in the conspiracy as 250 kilograms and neither Pessefall nor Whittaker disputed the stated quantity of cocaine on the boat. Also, the district court heard testimony at Pessefall's sentencing that established the quantity of cocaine involved in this case. Accordingly, the district court's decision to attribute the entire quantity of cocaine on the boat to each defendant is consistent with the sentencing guidelines and is not clearly erroneous.

## CONCLUSION

Because we find that the district court properly enhanced Whittaker's sentence for

---

**2.** pounds × 0.453 = kilograms
528 pounds × 0.453 = 239.184 kilograms

*Webster's New Collegiate Dictionary* 1319 (1979).

**518**

a coconspirator's possession of a firearm, properly admitted evidence of Rickman's prior similar acts, properly handled the extrinsic evidence matter, and properly determined the amount of cocaine attributable to Pessefall and Whittaker, we AFFIRM the sentences and judgments.

AFFIRMED.