[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 7, 2005
THOMAS K. KAHN
CLERK

No. 04-14511
Non-Argument Calendar

_____

D. C. Docket No. 03-00533-CR-NE

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

APOLONIO LOPEZ AGUIRRE,
a.k.a. Joel Lopez,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(September 7, 2005)

Before ANDERSON, BIRCH and CARNES, Circuit Judges.

PER CURIAM:

Apolonio Lopez Aguirre, a.k.a. Joel Lopez, appeals his convictions for (1) possession of a firearm by an illegal alien, in violation of 18 U.S.C. § 922(g)(5), and (2) possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). We AFFIRM.

## I. BACKGROUND

Aguirre was indicted and tried with codefendants for his participation in a conspiracy to possess and distribute methamphetamine in Cullman, Alabama. Following investigation by the Drug Enforcement Agency, one of the conspirators agreed to cooperate and to conduct a controlled delivery, which involved surveillance from an airplane by an investigator with the Cullman County Police Department. The investigator observed a Lincoln Continental making the delivery. The driver of the car was identified as Aguirre. When officers approached him, Aguirre fled the area, climbed over a fence, and laid down in some brush. As Aguirre was going over the fence, the investigating officer observed him throw something to the ground, but he was unable to identify the object. The investigator testified that he never observed anyone else in the area where he had witnessed Aguirre throw the object. After a search of the area where the investigator had seen the object thrown, an officer recovered a "hi-point semi-automatic pistol." R4

2

at 550.  During his testimony regarding Aguirre's course of travel in the Lincoln Continental, the investigator referred to an aerial photograph of the scene.

Aguirre testified that he ran when the police arrived because he was an illegal alien.  R5 at 638.  Aguirre admitted that he climbed over the fence, but denied that he had a gun in his hand and claimed that he saw another individual throw down the gun that was recovered from the scene.   The jury found Aguirre guilty of possession of a firearm as an illegal alien and as a convicted felon.

Thereafter, the judge told the parties that one of the jurors had informed a courtroom deputy that one of the other jurors had looked at a map that was not admitted into evidence and then, during the jury's deliberations, had drawn a picture or a diagram.  The judge stated that he did not know whether the diagram was a map of Cullman County or of the United States.   The judge then stated that "a map of the United States or a map of Cullman County, in all likelihood, if it had been offered, would have been accepted without objection by judicial notice.  And it's not that it's untrue evidence that's been admitted.  We have no idea what the map said, and that's what concerns me."  Id. at 744.  Aguirre moved for a mistrial. He noted that the trial included testimony regarding his movements and asserted that "there was no way to know how the jury used [the map] in their deliberation, whatever information they got from the map, whether it was distance or what."  Id.

3

at 748.  The judge overruled Aguirre's motion and responded that,

> with regard to [] Mr. Aguirre, all the movements of the white
> Continental, Lincoln Continental that I recall being testified about
> occurred within the grouping of houses and trailers, all of which we
> actually had an aerial photo of – not the movement, an aerial photo of
> the grouping.  And the description of the movement, while it's
> actually shown it went from here pointing on the photograph to here
> on the photograph, so I really think that there is no way that a map
> could add light either way with regard to the Continental.

Id.  The prosecutor stated that the judge had "covered what [he] was going to say."

Id. at 749.

The judge then brought the jury into the courtroom, informed the jury members about the allegations that had been brought to his attention, and reminded them that they could not consider anything outside of the evidence that had been presented at trial.  The judge then vacated the jury's earlier verdicts and, after each juror indicated that he or she could "disregard the map" and "make a new decision . . . based solely on the evidence presented," allowed the jury to recommence deliberations.  Id. at 752.  Thereafter, the jury again found Aguirre guilty of both crimes.  The district judge sentenced Aguirre to twenty-four months of imprisonment.

## II. DISCUSSION

On appeal, Aguirre argues that the trial judge committed reversible error when he denied his motion for a mistrial based upon the jurors' consideration of

4

extrinsic evidence. Specifically, Aguirre contends that, by failing to inquire as to the exact nature of the extrinsic evidence and what role this evidence played in the jury's deliberation, the district judge failed to determine whether or not the curative instructions that he gave to the jury were sufficient to overcome the prejudicial impact of the extrinsic evidence.

We review a district judge's denial of a motion for mistrial for an abuse of discretion. United States v. Trujillo, 146 F.3d 838, 845 (11th Cir. 1998). The government has the burden of establishing a defendant's guilt "solely on the basis of evidence produced in the courtroom and under circumstances assuring the accused all the safeguards of a fair trial." Farese v. United States, 428 F.2d 178, 179 (5th Cir. 1970). This theory "'goes to the fundamental integrity of all that is embraced in the constitutional concept of trial by jury.'" United States v. Rowe, 906 F.2d 654, 656 (11th Cir. 1990) (citation omitted). Jurors, in giving effect to such inferences as may reasonably be drawn from the evidence, properly may "apply their common knowledge, observations and experience in the affairs of life." United States v. Cruz-Valdez, 773 F.2d 1541, 1546 (11th Cir. 1985). Jurors, however, "have no right to investigate or acquire information relating to the case outside of that which is presented to them in the course of the trial in accordance with established trial procedure." Farese, 428 F.2d at 179. Nevertheless, "'due

process does not require a new trial every time a juror has been placed in a potentially compromising situation.'" Rowe, 906 F.2d at 656 (citation omitted).

Once a defendant establishes that the jury had contact with extrinsic material, prejudice is presumed. United States v. Caporale, 806 F.2d 1487, 1503 (11th Cir. 1986); but see Rowe, 906 F.2d at 656 (stating that prejudice is not presumed). Once the presumption is established, the burden shifts to the government to establish that the consideration of extrinsic evidence was harmless. United States v. Pessefall, 27 F.3d 511, 515 (11th Cir. 1994). Factors that the district judge should consider in determining whether the presumption was rebutted include "'the nature of the extrinsic information, the manner in which the information reached the jury, and the strength of the government's case.'" Id. (citation omitted). Ultimately, "'the jury's consideration of extrinsic material requires a new trial if the evidence poses a reasonable possibility of prejudice to the defendant.'" Id. at 516. (citation omitted). The district judge's determination of whether the defendant was prejudiced is a factual one that we review for an abuse of the district judge's "'large discretion.'" Rowe, 906 F.2d at 657 (citation omitted).

The district judge did not abuse his discretion in determining that any presumption of prejudice arising from the jury's consideration of extrinsic

6

evidence had been rebutted.  Given the charges that Aguirre faced, possession of a firearm by an illegal alien and possession of a firearm by a felon, the only issue to be resolved by the jury regarding his guilt was whether the gun recovered from the scene was the object that the investigator had observed Aguirre throw to the ground.  Although the district judge did not determine the exact nature of the map with which the jury came into contact, the only map that would have been relevant to the issue of Aguirre's guilt would have been a map of the area that the investigator identified as being in Aguirre's course of travel and the location where he observed Aguirre throw an object.  A map of this area, however, would have constituted cumulative evidence because an aerial photograph of this location was introduced into evidence.   Accordingly, the map did not pose a reasonable possibility of prejudice to Aguirre.  See  Pessefall, 27 F.3d at 516.

Significantly, the district judge mitigated any prejudice that may have resulted from the jury's exposure to the map by vacating Aguirre's conviction, reminding the jurors that they could not consider anything outside of the evidence that had been presented at trial, and allowing the jury to recommence its deliberation, only after each juror agreed that he or she could disregard the map and reach a new decision based solely on the evidence presented at trial.  Finally, the government's case against Aguirre was strong, given the investigator's

7

testimony that (1) a gun was recovered from the location where he observed Aguirre throw an object, and (2) he did not observe anyone other than Aguirre in this location. See Pessefall, 27 F.3d at 515 (stating that the strength of the government's case is a factor that should be considered in determining whether the presumption of prejudice was rebutted). Because (1) the extrinsic evidence with which the jury had contact was cumulative, (2) the district judge's curative instruction was sufficient to mitigate any potential prejudice that might have resulted, and (3) the government's case against Aguirre was strong, the district judge did not abuse his discretion by denying Aguirre's motion for a mistrial based on juror misconduct for considering extrinsic evidence.

## III. Conclusion

In this appeal, Aguirre argues that the trial judge committed reversible error by failing to grant his motion for a mistrial because the jury considered extrinsic evidence. As we have explained, the extrinsic evidence was cumulative and any potential prejudice that might have resulted was remedied by the judge's vacating the former verdicts and having the jury deliberate the verdicts again with curative instructions. Accordingly, Aguirre's convictions are **AFFIRMED.**