[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 07-12082

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOV 25, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 06-20149-CR-JAL

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JIMMY FELICIANO,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

**(November 25, 2008)**

Before HULL, MARCUS and KRAVITCH, Circuit Judges.

PER CURIAM:

Jimmy Feliciano appeals from his conviction and 188-month sentence for

conspiracy to possess with intent to distribute cocaine, 21 U.S.C. §§ 841 and 846;

attempt to possess with intent to distribute cocaine, 21 U.S.C. §§ 841 and 846, and

18 U.S.C. § 2; and conspiracy to interfere with commerce by robbery, 18 U.S.C. § 1951 (the "Hobbs Act"). Feliciano argues on appeal that: (1) there was insufficient evidence to support his Hobbs Act conspiracy conviction; (2) the district court abused its discretion in barring the impeachment of a co-conspirator; (3) the district court abused its discretion in allowing a detective to testify as an expert; (4) the district court abused its discretion in failing to give a multiple-conspiracy jury instruction; (5) the prosecutor made improper and prejudicial comments in closing argument; and finally, (6) the district court erred in applying a firearm enhancement to his sentence. After oral argument and careful review, we affirm.

I.

We review the sufficiency of evidence to support a conviction de novo, viewing the evidence in the light most favorable to the government and drawing all reasonable inferences and credibility choices in favor of the jury's verdict. United States v. Taylor, 480 F.3d 1025, 1026 (11th Cir.), cert. denied, 128 S. Ct. 130 (2007). We review a district court's evidentiary rulings for abuse of discretion. United States v. Perez-Oliveros, 479 F.3d 779, 783 (11th Cir.), cert. denied, 127 S. Ct. 2964 (2007). We evaluate a prosecutor's comments by asking: (1) whether the comments were improper, and (2) whether they prejudicially affected the

2

defendant's substantive rights. United States v. Garate-Vergara, 942 F.2d 1543, 1551 (11th Cir. 1991). We review a district court's refusal to give a requested instruction in its charge to the jury for abuse of discretion. United States v. Maduno, 40 F.3d 1212, 1215 (11th Cir. 1994). Finally, we review "the district court's findings of fact under U.S.S.G. § 2D1.1(b)(1) for clear error, and the application of the Sentencing Guidelines to those facts de novo." United States v. Pham, 463 F.3d 1239, 1245 (11th Cir. 2006) (quotations omitted).

## II.

The relevant facts drawn from the defendant's trial and the procedural history are as follows. In July 2005, a confidential source ("CS") provided the Bureau of Alcohol Tobacco Firearms and Explosives ("ATF") with information regarding an individual named Omar Ortega, who purportedly was involved in multiple narcotics-related home invasion robberies. At the direction of law enforcement officers, the CS proposed committing an armed robbery to Ortega, and introduced Ortega to an undercover detective, Juan Sanchez, who was posing as a disgruntled drug courier employed by a large-scale narcotics organization. Detective Sanchez told Ortega that he wanted to steal about 40 kilograms of cocaine that he was going to be delivering to a stash house in Miami for the organization. Ortega said he was willing to do the robbery and had the necessary

3

people and equipment, including police uniforms, badges, and a car that looked like a police car.

Ortega originally asked Joel Goenaga and three others to participate in the robbery -- planned for December 2005 -- but that robbery did not take place because not everyone was available. Ortega and Detective Sanchez rescheduled the robbery for February 2006, and Ortega asked the defendant, Jimmy Feliciano, to be a lookout, telling him that the plan was to steal cocaine and that Feliciano would receive one kilogram of cocaine for his participation. Feliciano, Goenaga, and three others (some of whom were new to the plan) agreed to participate.

On the morning of February 23, 2006, the planned date for the robbery, Ortega picked up his guns, and then attempted to buy police t-shirts for his men to wear, but could not find any. The same morning, seven calls were made between Ortega's and Feliciano's phones, two were made between Ortega's and Goenaga's phones, and two were made between Feliciano's and Goenaga's phones. Later that morning, Goenaga and Feliciano rode together to a pre-arranged meeting place. On the way there, Ortega called Goenaga and asked him if he had brought a gun. Goenaga responded, "no," and "Listen, I didn't bring it." When the phone call ended, Feliciano asked Goenaga, "What do you mean, you didn't bring the gun?"

Ortega and the five men he had enlisted arrived at the meeting place in three cars. After a discussion between Ortega and the CS, the three cars followed the CS's car into a predetermined location, at which time all six men were arrested. A search of one of the cars -- not Feliciano's -- revealed a loaded Smith & Wesson Model 66 .357 magnum revolver and a Kel-Tec 9mm semi-automatic pistol.

Feliciano was charged with one count of conspiracy to possess with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §§ 841 and 846; one count of attempt to possess with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. § 841 and 846, and 18 U.S.C. § 2; one count of conspiracy to commit a Hobbs Act robbery in violation of 18 U.S.C. § 1951; one count of attempt to commit a Hobbs Act robbery in violation of 18 U.S.C. §§ 1951 and 2; and one count of conspiracy to carry a firearm during a drug trafficking crime or crime of violence in violation of 18 U.S.C. § 924. At Feliciano's first trial, the jury was hung and the district court granted a judgment of acquittal as to the firearms count. At his retrial, Feliciano was found guilty by a jury of all counts except for the attempted robbery count, and the district court sentenced him to 188 months' imprisonment, followed by five years' supervised release and a $300 assessment. This timely appeal followed.

5

III.

First, we conclude that the evidence presented at trial was more than sufficient to enable a jury to reasonably find beyond a reasonable doubt that Feliciano participated in a Hobbs Act conspiracy. A Hobbs Act conspiracy conviction requires the government to prove beyond a reasonable doubt that: (1) two or more persons agreed to commit a robbery encompassed within the Hobbs Act; (2) the defendant knew of the conspiratorial goal; and (3) the defendant voluntarily participated in helping to accomplish the goal. United States v. To, 144 F.3d 737, 747-48 (11th Cir. 1998). A "robbery" under the Act is defined as:

> the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.

18 U.S.C. § 1951(b)(1). Feliciano contests only whether sufficient evidence of "actual or threatened force" was offered to prove the robbery element of the crime.

As the record amply shows, Ortega testified that Feliciano agreed to participate in the armed robbery plan as a lookout while Ortega and others stole the cocaine. In addition, Goenaga testified that when he was in the car with Feliciano on the way to the meeting place, he had a phone conversation with Ortega, and told Ortega that he did not bring a gun. According to Goenaga, after this phone call,

6

Feliciano asked him, "What do you mean, you didn't bring the gun?" The testimony establishes that Feliciano expected the use of firearms in the planned robbery of a drug stash house. See United States v. Tinoco, 304 F.3d 1088, 1122 (11th Cir. 2002) (recognizing that when we are assessing the sufficiency of the evidence, we accept all reasonable inferences and credibility choices in favor of the jury's verdict). Moreover, the fact that Ortega's plan was to rob the stash house while impersonating police -- in order to reduce the amount of force necessary -- in no way vitiates the actual or threatened use of force or violence. As is apparent from United States v. Diaz, 248 F.3d 1065 (11th Cir. 2001), the impersonation of police does not eviscerate the threat to use force -- there, the appellants impersonated police and nonetheless came at the victim with weapons drawn, threw him to the ground, blindfolded him, handcuffed him, and then threw him into the back of a car. Id. at 1098. What's more, the conspirators here did not actually end up impersonating police because Ortega could not find police t-shirts for his men to wear to the robbery. Finally, as we have said before in another Hobbs Act case, "[t]he fact that the intended victims and narcotics were fictional is irrelevant." United States v. Taylor, 480 F.3d 1025, 1027 (11th Cir. 2007).

Second, we find no merit to Feliciano's claim that the district court abused its discretion in barring Feliciano from impeaching Omar Ortega on one issue -- at

7

what point he informed police that Goenaga sold him a gun -- which Feliciano hoped to use to show that Ortega had lied under oath in order to protect Goenaga and others. The Sixth Amendment guarantees a criminal defendant the right "'to be confronted with the witnesses against him'" -- a right which includes "the right to conduct reasonable cross-examination." Olden v. Kentucky, 488 U.S. 227, 231 (1988) (per curiam) (quoting U.S. Const. amend. VI.). But even if the trial court violated the defendant's right to impeach a witness, we nonetheless must determine

> whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

Id. at 232-33 (quoting Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986)).

On this record, we cannot say that the district court's error, if indeed there was any, in barring the impeachment of Ortega on this one issue was harmful. On several occasions during a vigorous cross-examination, Ortega was impeached or admitted to lying, generally showing his untrustworthiness. In addition, Ortega was expressly questioned on the points that Feliciano wanted to prove by

8

impeachment -- i.e., when Ortega admitted that Goenaga sold him a gun, and whether he was protecting Goenaga. Moreover, Feliciano was also able to impeach Ortega's testimony regarding when he implicated Goenaga by questioning Detective Rob Christie, who testified that the first time he learned that Ortega had obtained a firearm from Goenaga was during Ortega's testimony in the first trial, even though Ortega testified at the second trial that he had told the authorities about that during earlier debriefings. Finally, the other evidence against Feliciano -- including the testimony of Goenaga and the arresting officer, as well as cell phone records -- was strong. In light of this ample record, the district court's refusal to allow Feliciano to impeach Ortega on the Goenaga issue was harmless, if error at all, and did not amount to an abuse of discretion.

Third, we are unpersuaded that the district court abused its discretion in allowing Detective Christie to testify about cell tower sites, which hindered Feliciano's argument that Manny Ortega, not Feliciano, was the sixth participant in the robbery. Federal Rule of Evidence 701 provides that:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701. "The line between the expert testimony under Fed. R. Evid. 702 . . . and lay opinion testimony under Fed. R. Evid. 701 . . . is not easy to draw." United States v. Colon-Osorio, 360 F.3d 48, 52-53 (1st Cir. 2004). Thus, a law enforcement officer may be qualified to provide both lay opinion and expert testimony. Fed. R. Evid. 701 advisory committee's note (citing United States v. Figueroa-Lopez, 125 F.3d 1241, 1246 (9th Cir. 1997)). In fact, we have recognized that police officers can testify as lay witnesses "based upon their particularized knowledge garnered from years of experience within the field." Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co., 320 F.3d 1213, 1223 (11th Cir. 2003). Similarly, other courts have held that "[e]xperience-derived police testimony concerning criminals' typical modi operandi during a drug transaction does not automatically constitute expert testimony, but . . . lay-witness testimony admissible under Federal Rule of Evidence 701 . . . ." United States v. Page, 521 F.3d 101, 105 (1st Cir. 2008).

Here, the purpose of Detective Christie's cross-examination testimony concerning the location of cellular towers simply was to establish that Manny Ortega's cellular telephone's call to Ortega following Ortega's arrest did not originate at a point near the arrest location. Detective Christie did not express an expert opinion based on scientific, technical, or other specialized knowledge, as

required under Fed. R. Evid. 702. Instead, he simply reviewed the cellular telephone records and a summary of those calls, which identified cellular towers for each call, and based on his personal knowledge concerning the locations of certain cellular towers, testified that, at the time of the call, Manny Ortega's cellular telephone was nowhere near the arrest location.[1]  Thus, because the testimony was properly admitted under Fed. R. Evid. 602 and Fed. R. Evid. 701, and did not constitute expert testimony under Fed. R. Evid. 702, the district court did not abuse its discretion in allowing Detective Christie to testify about the cellular tower locations.

Fourth, we likewise are not convinced that the district court abused its discretion in failing to give to the jury a multiple-conspiracy instruction, which Feliciano requested in the hope that the jury would find that the robbery originally scheduled for December 2005 -- which he was not involved in -- was a separate conspiracy from the robbery rescheduled for February 2006 -- which he was involved in.  "Generally, a multiple conspiracy instruction is required where the indictment charges several defendants with one overall conspiracy, but the proof at trial indicates that a jury could reasonably conclude that some of the defendants

_____

[1] As a result, the circumstances here are unlike those found in United States v. Sepulveda, 115 F.3d 882, 884-85 (11th Cir. 1997), where the government used experts to explain scientific and technical issues pertaining to the "cloning" of cellular telephones.

11

were only involved in separate conspiracies unrelated to the overall conspiracy charged in the indictment." United States v. Calderon, 127 F.3d 1314, 1328 (11th Cir. 1997) (quotations and emphases omitted). On appeal, we ask whether a reasonable jury "could . . . have reasonably concluded from the evidence that multiple conspiracies, rather than the single charged conspiracy, existed." Id. at 1329. To succeed, the defendant must show that he was substantially prejudiced by the district court's refusal to give the instruction. Id. at 1330. To find prejudice, we "would have to conclude that the evidence of multiple conspiracies was so strong that the jury would probably have acquitted [the defendant] of the conspiracy charges had it been given the tendered instruction." Id.

A single conspiracy is shown "[i]f a defendant's actions facilitated the endeavors of other co[-]conspirators or facilitated the venture as a whole." United States v. Edouard, 485 F.3d 1324, 1347 (11th Cir. 2007) (quotations omitted). "It is irrelevant that particular conspirators may not have known other conspirators or [may not] have participated in every stage of the conspiracy; all that the government must prove . . . is an agreement or common purpose to violate the law and intentional joining in this goal by co[-]conspirators." Id. (quotations omitted). "[T]he finding of a single conspiracy is permitted where a 'key man' directs and coordinates the activities and individual efforts of various combinations of people."

12

Id. at 1347 (quotations omitted). "A single conspiracy does not become many simply because of the changing composition of the personnel comprising the conspiracy or because some members performed only a single function." United States v. Meester, 762 F.2d 867, 880 (11th Cir. 1985).

Here, we cannot say that the record "sufficiently support[s] appellant's theory of multiple conspiracies to warrant the requested instruction." Calderon, 127 F.3d at 1329. Rather, the evidence overwhelmingly points to a single, overarching conspiracy to rob cocaine from a drug organization through actual or threatened force and to possess the stolen cocaine with intent to distribute it, and in which Feliciano was a participant. See United States v. Richardson, 532 F.3d 1279, 1290 (11th Cir. 2008) (expressing "doubt" that "the requested charge, whose language seems to require an acquittal upon a finding of multiple conspiracies, is ever appropriate where there is sufficient evidence to establish a defendant's membership in at least one conspiracy within the scope of the indictment").

The trial testimony established that Ortega was the leader in the robbery conspiracy. All of the conspirators shared common goal of stealing the cocaine and each conspirator's actions facilitated the achievement of this goal: (1) three of the co-conspirators, including Ortega, were supposed to be the "jumpouts" who would take the cocaine by force from Detective Sanchez, and use the firearms against any

13

armed security personnel at the stash house; (2) three other co-conspirators, including Goenaga and the defendant Feliciano, were lookouts who were supposed to watch out for police and watch for activity at the stash house; and (3) Feliciano and Gamez were responsible for driving the participants to and from the robbery scene. In addition, all the participants expected to share in the fruits of the robbery -- the 35 to 45 kilograms of purported cocaine -- in proportional share to their roles in the robbery. Moreover, the fact that the robbery planned for December 2005 was aborted because some of the participants had backed out, and that Feliciano and some of the other participants in the February 2006 planned robbery were not participants in the earlier plan does not demonstrate that there were two separate conspiracies. The plan always remained the same -- to rob the cocaine from Detective Sanchez and the drug organization. As we have held, "[a] conspiracy is presumed to continue until its objectives have been abandoned or accomplished." Id. at 1286. Quite simply, the district court did not abuse its discretion in failing to give a multiple-conspiracy jury instruction.[2]

Fifth, we remain unconvinced that the prosecutor's comments in closing argument were improper or that they prejudiced Feliciano's substantial rights. A

[2] Moreover, Feliciano has failed to even argue that had the requested multiple conspiracy charge been given, he probably would have been acquitted. There is no doubt that Feliciano was an active participant in the charged February 2006 conspiracy; a multiple-conspiracy instruction would not have altered the jury's guilty verdict.

14

defendant's substantial rights are prejudicially affected when a reasonable probability arises that, but for the prosecutor's statements, the outcome of the trial would have been different. See United States v. O'Keefe, 461 F.3d 1338, 1350 (11th Cir. 2006), cert. denied, 127 S. Ct. 1308 (2007).

The first comment Feliciano challenges -- that Feliciano was "surprised" that Goenaga did not bring a gun -- was based on Goenaga's recollection of Feliciano's question, "What do you mean, you didn't bring the gun?" Since the prosecutor's comment was plainly a "logical inference[] drawn from the evidence," Parker v. Singletary, 974 F.2d 1562, 1579 (11th Cir. 1992), we cannot conclude that it was improper. The next comment -- that Manny Ortega's cell phone was 15 miles away from the scene when the crime was unfolding -- was likewise not improper because, as we have noted already, Detective Christie's testimony on this issue was properly admitted. And as for the last comment -- that Ortega and Goenaga were "bad guys" and would not be invited to the prosecutor's home, implying Feliciano's guilt by association -- we cannot say that this comment, even if improper, prejudicially impacted Feliciano's substantial rights. The record establishes that a jury found Feliciano guilty based on the ample evidence of his own involvement in the offenses, and there is no reasonable probability that, but

15

for the prosecutor's statements, the outcome of the trial would have been different. O'Keefe, 461 F.3d at 1350.

Finally, we reject Feliciano's claim that the district court erred in applying a two-level firearm enhancement to his sentence. For the enhancement found in U.S.S.G. § 2D1.1(b)(1) to be applied when a firearm is possessed by a co-conspirator, the government must establish by a preponderance of the evidence that "(1) the possessor of the firearm was a co-conspirator, (2) the possession was in furtherance of the conspiracy, (3) the defendant was a member of the conspiracy at the time of possession, and (4) the co-conspirator possession was reasonably foreseeable by the defendant." Pham, 463 F.3d at 1245 (quotations omitted). Regarding the fourth element -- the only element in dispute here -- we have held that "protestations that [the defendants] were in fact unaware of the firearm possession [of a co-conspirator] do[es] not upset the district court's finding that the possession of the firearm was reasonably foreseeable." United States v. Pessefall, 27 F.3d 511, 515 (11th Cir. 1994) (quotations omitted).

The evidence here plainly shows that the possession of firearms by Feliciano's co-conspirators was reasonably foreseeable to Feliciano. As discussed above, Goenaga's testimony suggested that Feliciano expected the use of firearms in the planned stash house robbery. Moreover, due to the nature of the crime -- a

16

drug stash house robbery involving approximately 45 kilograms of cocaine -- the involvement of firearms would have been foreseeable. See United States v. Freyre-Lazaro, 3 F.3d 1496, 1506 (11th Cir. 1993) (finding it foreseeable that co-conspirator would be armed while transporting 13 kilograms of cocaine). And finally, Feliciano's argument that he did not know firearms would be involved, that there was no evidence showing he used firearms in a previous marijuana grow house robbery, that Ortega had never seen him with a gun, and that the guns in the instant offense were not in his car, does not upset the district court's unambiguous finding that the possession of firearms by Feliciano's co-conspirators was altogether foreseeable to him. See Pessefall, 27 F.3d at 515. Accordingly, the district court did not err in applying a two-level firearm enhancement to Feliciano's sentence.

**AFFIRMED.**