*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
February 11, 2025
10:17 AM

Plaintiff-Appellee,

v

No. 362785
Eaton Circuit Court
LC No. 2019-020042-FC

DAEVON MARSHAWN REMBERT,

Defendant-Appellant.

Before: N. P. HOOD, P.J., and REDFORD and MALDONADO, JJ.

REDFORD, J. (*dissenting*).

I conclude that the record does not support the majority's determination that trial counsel advised defendant that he could not prevail at trial on the basis of a misunderstanding of law. I likewise conclude that trial counsel's description of the minimum sentence applicable to defendant did not render defendant's plea unknowing and involuntary. Therefore, defendant's plea was not rendered unknowing and involuntary on the basis of ineffective assistance of counsel. Further, in my view, none of defendant's remaining appellate arguments left unaddressed by the majority merit reversal. I would affirm defendant's convictions and sentences. Accordingly, I respectfully dissent.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case is before us on remand from the Michigan Supreme Court for consideration as on leave granted.[1] Defendant was charged with two counts of armed robbery, MCL 750.529, under an aiding-and-abetting theory for an armed robbery perpetrated at a Biggby Coffee Shop. Defendant does not dispute that he drove his two codefendants that day, that he dropped them off near the coffee shop, and that he waited for them to return. He also does not dispute that his codefendants robbed the coffee shop at gunpoint and that he drove them away when they fled the coffee shop.

---

[1] *People v Rembert*, 512 Mich 957 (2023).

As explained by the majority, the relevant dispute pertains to defendant's knowledge and intent. Defendant maintains that his friends requested his assistance in a scam against a "white boy" planning to purchase drugs for $300. Defendant maintains he believed his codefendants planned to take the money and flee without providing any drugs. Defendant also maintains he did not know his codefendants were armed until seeing the gun upon their return to his car. Defendant concedes that he helped his codefendants flee, but he maintains he did not know that they robbed the coffee shop until he was later informed by police officers.

Defendant pleaded guilty pursuant to a *Cobbs*[2] agreement. At the plea hearing, defendant continued to maintain that he did not know that his codefendants were armed or that they intended to rob a coffee shop. The trial court accepted defendant's plea after defendant pleaded that he knew his codefendants intended to perpetrate a "robbery" against someone, but insisted that he did not know it was an armed robbery until he saw the gun after the fact. Defendant moved to withdraw his plea in 2022, arguing that the factual basis of his plea was inadequate.

Relevant to the review of defendant's ineffective-assistance-of-counsel claim is defendant's delay in seeking to withdraw his plea and seeking appellate relief. Defendant pleaded guilty in July 2019 and was sentenced and informed of his appellate rights in September 2019. Defendant waited two years to reinstate his appellate rights for his claims. Following restoration of his appellate rights, defendant moved to withdraw his plea, asserting only that the factual basis provided for his plea was insufficient. Defendant did not claim that trial counsel provided ineffective assistance of counsel in relation to the plea at that time. Rather, after the trial court denied defendant's motion, defendant raised ineffective assistance of counsel for the first time in his application for leave to appeal in this Court. Consequently, approximately five years passed between defendant entering a guilty plea and the *Ginther*[3] hearing.

The effects of this delay are evident from trial counsel's testimony at the *Ginther* hearing. Trial counsel had little recollection of his representation of defendant. He was able to generally testify regarding his common practices, but did not recognize defendant and recalled few details of his case. Through no fault of his own, trial counsel was unable to refresh his recollection of defendant's case because a fire destroyed defendant's case file, along with other closed files, several years before the hearing. When asked what defense strategy would have been available at trial, trial counsel explained that his only option would have been "to probably argue some sort of jury nullification." When asked to explain why "jury nullification" would be necessary if defendant "didn't share the same intent with" his codefendants, trial counsel explained:

> Well, because that's not the standard in my humble opinion. If you decide to go along—first of all, he knew they were going to do something that wasn't legal; he told me that. He didn't think it was going to go to the extent that it went, but you know, anybody heard of felony murder? I mean, it happens all the time. Somebody gets killed, you're charged with murder, you went there with no intent to murder anybody; no intent to even have a death occur, but it happens. As I told

---

[2] *People v Cobbs*, 443 Mich 276; 505 NW2d 208 (1993).

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[defendant], you're in for a penny; you're in for a pound. Whatever they do, because you were with them, and agreed to be with them and agreed to be a part of it, you are now part of it.

The trial court denied defendant's motion to withdraw his plea after concluding that defendant failed to meet his burden for his claim of ineffective assistance of counsel. The trial court noted that trial counsel and other witnesses had especially poor recollections of this case and that trial counsel gave an incorrect recitation of the law on aiding and abetting at the hearing. However, the trial court concluded that trial counsel's common practice was within the range of competence required of an attorney and that defendant failed to show that trial counsel deviated from his common practice.

## II. ANALYSIS

"The question whether defense counsel performed ineffectively is a mixed question of law and fact; this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). In *People v Carbin*, 463 Mich 590, 599-600, 623 NW2d 884 (2001), the Michigan Supreme Court has recited the principles that govern our analysis of a claim of ineffective assistance of counsel:

To justify reversal under either the federal or state constitutions, a convicted defendant must satisfy [a] two-part test . . . . First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not performing as the counsel guaranteed by the Sixth Amendment. In so doing, the defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy. Second, the defendant must show that the deficient performance prejudiced the defense. To demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim. [Quotation marks and citations omitted.]

A defendant is entitled to the effective assistance of counsel in the plea-bargaining process. *People v Pennington*, 323 Mich App 452, 461; 917 NW2d 720 (2018). "When ineffective assistance of counsel is claimed in the context of a guilty plea, the relevant inquiry is whether the defendant tendered the plea voluntarily and understandingly." *People v White*, 307 Mich App 425, 431; 862 NW2d 1 (2014). A guilty plea may be rendered involuntary or unknowing on the basis of ineffective assistance of counsel when trial counsel "failed to explain adequately the nature of the charges or the consequences of the guilty plea" or "failed to discuss possible defenses to the charges to which the defendant is pleading guilty." *People v Corteway*, 212 Mich App 442, 445; 538 NW2d 60 (1995). To establish the prejudice prong, a "defendant must show the outcome of the plea process would have been different with competent advice." *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014), quoting *Lafler v Cooper*, 566 US 156, 163; 132 S Ct 1376; 182 L Ed 2d 398 (2012). Specifically, "the defendant must show that there is a reasonable probability

that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v Lockhart*, 474 US 52, 59; 106 S Ct 366; 88 L Ed 2d 203 (1985).

Defendant contends that trial counsel failed to recognize that the underlying facts in this case did not support a conviction of armed robbery under an aiding-and-abetting theory and, had trial counsel advised defendant regarding the intent necessary to aid and abet an armed robbery, he would have rejected the plea and proceeded to trial. In both the trial court and this Court, defendant contends that he only had an intent to aid and abet larceny. The inquiry whether trial counsel performed ineffectively requires an analysis of whether, assuming defendant's recitation of the facts is truthful, defendant's conduct constitutes aiding and abetting an armed robbery.

The elements of aiding and abetting are:

(1) the crime charged was committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement." [*People v Carines*, 460 Mich 750, 757-758; 597 NW2d 130 (1999) (quotation marks and citation omitted).]

"Aiding and abetting describes all forms of assistance rendered to the perpetrator of a crime and comprehends all words or deeds that might support, encourage, or incite the commission of a crime . . . ." *Id*. at 757 (quotation marks and citation omitted). Aiding and abetting, however, does not include those who assist after the fact of the crime. *People v Lucas*, 402 Mich 302, 305; 262 NW2d 662 (1978). Rather, "one who, with knowledge of the other's guilt, renders assistance to a felon in the effort to hinder his detection, arrest, trial or punishment" is guilty of accessory after the fact. *Id*. at 304 (quotation marks and citation omitted).

The majority's analysis starts with whether the armed robbery of the coffee shop was a natural and probable consequence of larceny. Before addressing that analysis, I first note that the course of an armed robbery includes the robbers' conduct in fleeing the scene of the crime. In accordance with MCL 750.529, the elements required to establish armed robbery are:

(1) the defendant, in the course of committing a larceny of any money or other property that may be the subject of a larceny, used force or violence against any person who was present or assaulted or put the person in fear, and (2) the defendant, in the course of committing the larceny, either possessed a dangerous weapon, possessed an article used or fashioned in a manner to lead any person present to reasonably believe that the article was a dangerous weapon, or represented orally or otherwise that he or she was in possession of a dangerous weapon. [*People v Muhammad*, 326 Mich App 40, 61; 931 NW2d 20 (2018) (quotation marks and citation omitted).]

MCL 750.529 incorporates by reference MCL 750.530, which provides as follows:

(1) A person who, in the course of committing a larceny of any money or other property that may be the subject of larceny, uses force or violence against any

person who is present, or who assaults or puts the person in fear, is guilty of a felony punishable by imprisonment for not more than 15 years.

(2) As used in this section, "in the course of committing a larceny" includes acts that occur in an attempt to commit the larceny, or during commission of the larceny, or in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the property.

Evident from the plain language of MCL 750.530, the course of committing a larceny includes "flight or attempted flight after the commission of the larceny . . . ." MCL 750.530(2). Armed robbery is a transactional crime. *People v Williams*, 491 Mich 164, 170-172; 814 NW2d 270 (2012) (explaining that our Legislature adopted a transactional theory of robbery, meaning that a defendant has not completed a robbery until after he has escaped with stolen property, in 2004 PA 128). As incorporated by MCL 750.529, "the course of an armed robbery includes the robber's conduct in fleeing the scene of the crime." *People v Mann*, 287 Mich App 283, 287; 786 NW2d 876 (2010). In this case, defendant maintains that he knew from the start that he was assisting his codefendants in a larceny. When his codefendants returned to the car, defendant saw one of the codefendants carrying a gun.[4] He proceeded to drive them away from the scene of the crime. Accordingly, at the time defendant drove the get-away vehicle, he intended the commission of an armed robbery or had knowledge that the principal intended its commission at the time he gave aid and encouragement. See *Carines*, 460 Mich at 757-758.

Moving on to the majority's analysis, I do not see the same chasm in the natural and probable consequences between the larceny against a would-be drug buyer and the armed robbery of the Biggby. "[A] defendant who intends to aid, abet, counsel, or procure the commission of a crime, is liable for that crime as well as the natural and probable consequences of that crime." *People v Robinson*, 475 Mich 1, 3; 715 NW2d 44 (2006) (emphasis omitted). "Under the natural and probable consequences theory, [t]here can be no criminal responsibility for any thing not fairly within the common enterprise, and which might be expected to happen if the occasion should arise for any one to do it." *Id*. at 9 (quotation marks and citation omitted).

As described by defendant, defendant agreed to act as a get-away driver in a plan to deceive a would-be drug buyer into handing over funds without providing drugs in return. Contrary to the majority's assertion, common sense counsels that drug dealing is an inherently dangerous enterprise in which both buyer and seller would be reasonably expected to carry a firearm to protect themselves or the product.[5] This plan could have easily escalated into a violent affray in which a

---

[4] At the *Ginther* hearing, defendant attempted to further distance himself from the crime and denied that he saw the merchandise bag and gun at all when his codefendants returned to the car. The prosecution confronted defendant with a waiver form from a polygraph he took before pleading guilty to the armed robbery charges. On the polygraph waiver form, defendant placed his initials next to the statements that he saw his codefendants jog back to the car and that they were carrying a gun and a black bag of merchandise when they returned to the car.

[5] State and Federal courts alike have recognized the common sense notion that drug dealing and firearms are often associated because of the dangers inherent in the line of work. See e.g., *United*

codefendant brandishes a weapon on his own or in response to the victim's attempt to prevent the larceny. Adding on the fact that defendant believed that he was aiding his codefendants in committing a larceny against a would-be drug buyer only adds to the danger inherent in the common enterprise. Regardless of whether defendant knew his codefendants possessed a firearm during the act, the carrying of a firearm and the use of force is reasonably foreseeable in drug dealing and larceny against a drug buyer.

The added layer in the string of natural and probable consequences in this case is that, rather than the planned larceny of the drug buyer, the codefendants instead brandish weapons to rob the nearby Biggby. I would conclude that the robbery of a nearby Biggby rather than a would-be drug buyer does not remove this case from the natural and probable consequences of the intended crime. Defendant drove his codefendants to a specific location with the intent of stealing money from someone. That his codefendants would shift the focus of that theft from a would-be drug buyer to nearby cashiers to demand money is of little difference.

Turning back to trial counsel's recitation of the legal standard for aiding and abetting at the *Ginther* hearing, I would note that trial counsel appeared to invoke the natural and probable consequences theory when he explained that defendant was "in for a penny; [] in for a pound." Trial counsel paired this explanation with an invocation of felony murder, which requires a homicide to "be incident to the felony and associated with it as one of its hazards," *People v Gillis*, 474 Mich 105, 127; 712 NW2d 419 (2006) (quotation marks and citation omitted). Admittedly, trial counsel's invocation of these concepts was inelegant, but it indicates his understanding that a defendant is culpable not only for what he intends, but anything fairly within the scope of criminal enterprise. I cannot conclude that trial counsel's inelegant explanation, when placed in the context that he had virtually no recollection of his representation of defendant, established that trial counsel provided assistance that deviated from his common practice. Trial counsel otherwise testified that it was his common practice to discuss the facts of the case, discuss whether the facts fit the elements of the charged crime, discuss the consequences and benefits of a plea offer, and discuss what the defendants could expect if they went to trial.[6] Accordingly, I would conclude that trial

_____

States v Lopez*, 649 F3d 1222, 1242 (CA 11, 2011) ("[T]his Court has long recognized that, as Forrest Gump might say, drugs and guns go together like peas and carrots."); *Bolden v Commonwealth*, 49 Va App 285, 293; 640 S E 2d 526 (2007). Likewise, courts have held that a confederate's possession of a weapon in a drug deal is a natural and probable consequence of the venture. See e.g., *United States v Pessefall*, 27 F3d 511, 515 (CA 11, 1994); *United States v Golter*, 880 F2d 91, 94 (CA 8, 1989).

[6] The majority states that trial counsel admitted at the *Ginther* hearing that he did not explain the elements of the charged offense to defendant. This misconstrues the record. Trial counsel stated that defendant was "a very intelligent young man" and "didn't require me to spell it out for him" when asked if he broke down concepts more carefully when working with teenage clients. He followed up this statement by stating that he would have spelled out concepts more basically if needed, but defendant understood their conversations. Later, when asked if he read the elements of aiding and abetting to defendant, trial counsel again stated that defendant was "a very intelligent young man" and "I think he'd be insulted if I sat there and read to him like he doesn't know how

counsel did not advise defendant that he could not prevail at trial on the basis of a misunderstanding of law.

Next, the majority concluded that trial counsel's inaccurate description of the terms of the *Cobbs* agreement likewise rendered the plea unknowing and involuntary. In order for a plea to be voluntary and knowing, the defendant "must be fully aware of the direct consequences of the plea.," which includes the "penalty to be imposed." *People v Cole*, 491 Mich 325, 333, 334; 817 NW2d 497 (2012) (quotation marks and citation omitted). Review of the plea hearing shows that immediately before the hearing, trial counsel advised defendant that the *Cobbs* agreement provided for a minimum sentence of 11 years rather than 10 years. The trial court informed trial counsel and defendant that the actual minimum sentence was 11 years and 3 months. Following this exchange, trial counsel asked defendant if he still wanted to plead guilty, and defendant answered affirmatively. I do not conclude that the misunderstanding regarding the minimum sentence rendered his plea unknowing or involuntary. The minimum sentence was clarified before defendant entered the plea. Overall, defendant was sufficiently aware of the overall benefits of the bargain. The guidelines minimum sentence range for armed robbery in this case was 171 to 285 months' imprisonment. Trial counsel secured defendant a below guidelines *Cobbs* agreement of 135 months to 480 months' imprisonment, a 36-month difference from the guidelines minimum sentence range. Although defendant may have been misinformed about this piece of his plea amounting to a difference of 15 months in the minimum sentence until the plea hearing, this misinformation was dispensed with at the plea hearing before he entered the plea. Therefore, I cannot conclude that defendant's plea was rendered unknowing and involuntary.

---

to read himself." This record does not support that trial counsel did not explain the elements of the charged offense to defendant, it merely shows that trial counsel did not read the elements of aiding and abetting to him word for word from the jury instruction. Trial counsel's duty was to "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." MRPC 1.4(b). Defendant bore the burden of establishing the factual predicate of his claim, see *Carbin*, 463 Mich at 599-600, and he has failed to show that trial counsel deviated from his common practice of discussing whether the facts of the case fit the elements of the crime.

Finally, in my view, the additional argument raised in defendant's appeal left unaddressed by the majority does not merit reversal.[7]  I would affirm defendant's convictions and sentence.[8] Accordingly, I respectfully dissent.

/s/ James Robert Redford

---

[7] For purposes of this dissent, it is unnecessary to engage in an analysis of defendant's arguments that the majority did not reach.  I have examined these arguments in light of the record and conclude that none of them merit reversal.

[8] Assuming without agreeing that the majority correctly concluded that trial counsel provided an incorrect recitation of the law, at a minimum before reversing, this Court should remand to allow the prosecution to supplement the record with video of defendant's post-polygraph police interview.  The prosecution asserts that the video shows defendant admitting that he saw his codefendants with a firearm when they returned to his vehicle after the robbery and that he knew at that point that they had robbed someone with a gun.